# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 27, 2023

Lyle W. Cayce
Clerk

No. 22-10721

United States of America,

*Plaintiff—Appellee*,

*versus*

Jabsie Dwayne Lewis,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CR-429-1

Before King, Jones, and Duncan, *Circuit Judges*.

Per Curiam:*

Jabsie Dwayne Lewis violated the conditions of his supervised release. The district court revoked his supervised release and sentenced him to 12 months and a day in prison and five years of supervised release. On appeal, Lewis argues that the aggregate sentence was substantively unreasonable and that the district court erroneously considered his rehabilitative needs and his socioeconomic status. We disagree and hold that the district court's

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-10721

revocation and sentencing were motivated primarily by Lewis's criminal history and that Lewis has thus not shown substantive unreasonableness or plain error. We thus AFFIRM.

## I.

In 2009, Defendant-Appellant Jabsie Dwayne Lewis pleaded guilty in the District of New Mexico to possession with intent to distribute more than five grams of a mixture and substance containing cocaine base. He was sentenced to 188 months of imprisonment and eight years of supervised release. Lewis's supervised release term was transferred to the Northern District of Texas on August 26, 2021.

On November 1, 2021, Lewis's probation officer filed a petition alleging that Lewis violated his release term's prohibition on traveling outside the Northern District of Texas without permission; Lewis admitted this violation to his probation officer. In response, the district court ordered Lewis to participate in a location monitoring program for 60 days, during which time he was restricted to his residence except for authorized absences.

On March 8, 2022, the probation officer filed another petition alleging further violations of Lewis's release term conditions. The petition first alleged that Lewis traveled to Copperas Cove in the Western District of Texas. Additionally, the petition alleged that Lewis violated another condition by failing to attend mental health treatment. Because of these violations, Lewis's recommended guidelines imprisonment range was eight to fourteen months. He was granted pretrial release via home detention on March 14. Afterwards, in an addendum filed on May 16, the probation officer further alleged that Lewis had again traveled outside of the Northern District of Texas to Lampasas in the Western District of Texas and Albuquerque in the District of New Mexico.

No. 22-10721

On May 31, Lewis filed an unopposed motion to revoke his pretrial release and to permit self-surrender due to changed circumstances: namely, his loss of stable housing. He explained that, upon his release from home detention, he was to stay with his aunt in the Northern District of Texas until May 19, the initial date of his revocation hearing. Based on this date, Lewis's aunt arranged to leave her home on June 1 to travel to Oklahoma to be with family. But Lewis's revocation hearing was reset for June 29. Thus, Lewis explained, he would become homeless on May 31, and his only alternative would be the financially burdensome option to stay in a hotel from May 31 until his new revocation hearing date. Accordingly, Lewis stated in this motion that he and the Government had agreed as follows: (1) Lewis would admit the Copperas Cove travel violation; (2) in exchange, the Government would not pursue the other alleged violations; and (3) Lewis would request a sentence of two to three months of incarceration so that he could subsequently be released into another, non-Northern Texas district where he would have support. A magistrate judge granted the motion, and Lewis self-surrendered.

On July 22, Lewis filed a notice of intent seeking revocation of his supervised release, a sentence of time served,[1] and no further supervision. Alternatively, if the district court wanted to impose further supervision, Lewis asked for a reduced term of supervision and a modification of conditions so that he could reside in the Western District of Texas; he noted that the Government was not opposed to a sentence of time served, one year of supervision, and permission to live in the Western District.

---

[1] Lewis explained in this motion that, per the Bureau of Prisons, his previously requested sentence of two-to-three months would not provide sufficient time to trigger a new release plan.

No. 22-10721

In his notice, Lewis further explained his troubled housing history. After his imprisonment (*i.e.*, before his supervised release) and during his stay in a residential re-entry center, Lewis had received approval to live in the Eastern District of Texas, which was then listed as the district of supervision. Upon starting his supervised release, Lewis's supervision was re-assigned to the Northern District of Texas; this required Lewis to break his Eastern District lease and move into a motel with his son. Lewis then moved into a room that turned out to be a scam. A family member offered a trailer in Copperas Cove in the Western District of Texas for Lewis to stay in. On February 9, 2022, Lewis provided this Copperas Cove address to his probation officer but was advised it would take two-to-three weeks for approval to transfer his address. During this time, Lewis and his son lived in a motel and, when he ran out of money, in his vehicle. Lewis moved to the Copperas Cove trailer about two weeks after submitting the transfer request but before he had received approval.

On July 25, the district court held the revocation hearing. There, Lewis admitted his unauthorized travel to Copperas Cove. His counsel reiterated Lewis's housing troubles and his prior request for a sentence of time served and no further supervised release. Lewis's counsel stated that Lewis would be able to find stable housing in the Western District of Texas but that there was no guarantee that the court in the Western District would agree to accept his supervision.

The district court then reviewed Lewis's criminal history, including possession of a firearm and a failure to appear after his release. Lewis's counsel noted that Lewis's drug possession sentence was a mandatory minimum sentence for possessing five or more grams of crack cocaine; less than four months after his sentencing, the Fair Sentencing Act raised this five-gram standard to twenty-eight grams. Accordingly, Lewis's counsel noted that had Lewis delayed his plea, he may have been sentenced later

under the more lenient Fair Sentencing Act standard. Lewis's counsel noted that, under supervision, Lewis had no offenses, no drug use, and no issues reporting to his probation officer.

The district court expressed some concern about Lewis's release violations. It stated: "Well, he's wandering where he's not supposed to be. That concerns me. And I understand that there is some homelessness and some instability issues. . . . I do have concerns about just releasing him without trying . . . to resolve those issues." The district court stated that it would not send Lewis to the "Western District where he would have some support . . . because it sounds like they won't take him." It then noted that Lewis's criminal history raised "concerns about safety" and that it needed "to balance . . . keeping him safe with needing to keep society safe."

As an alternative to revoking his supervised release, Lewis's counsel suggested modifying his release conditions to authorize travel between the districts and checking up on him after three months at a status conference. The Government expressed its hope for a "solution that will permit either . . . an easier transfer to the Western District, or at least if his supervision continues here, . . . travel between the districts that's not going to cause another violation." The Government agreed with Lewis that it would be "completely appropriate" not to revoke his supervised release in this case, as Lewis's violation was only a "technical" one. In addition, the Government specified that it did not "think any further term of incarceration is appropriate."

The district court rejected both parties' proposed solutions. It stated that it "gave [Lewis] a shot earlier" when Lewis had "wandered" before. Given this past violation, the district court was "not comfortable" with allowing Lewis unrestricted travel to other districts. It stated, "I want to address this homelessness issue, but there's a reason that I'm supervising

him in the Northern District; and it's because I want to keep an eye on him" because Lewis has "a significant criminal history."

The district court then revoked Lewis's supervised release and sentenced him to twelve months and a day in prison. It also sentenced Lewis to five years of supervised release, during which time he must reside at a residential re-entry center "for a period of no more than 180 days, to be released at the direction of the probation officer" and participate in a location monitoring program for one year while being "continuously restricted to his place of residence, except for authorized absences approved in advance by his U.S. probation officer." Lewis timely appeals, challenging (1) the reasonableness of the district court's aggregate sentence; (2) the district court's reliance on Lewis's rehabilitative needs in sentencing; and (3) the district court's reliance on Lewis's socioeconomic status ("SES") when determining the sentence.

## II.

Lewis preserved his substantive reasonableness claim in the district court by advocating for a particular sentence. *See Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020) (holding that, "where a criminal defendant advocates for a sentence shorter than the one ultimately imposed," "[n]othing more is needed to preserve the claim that a longer sentence is unreasonable."). We thus review this issue under the "plainly unreasonable" standard. *United States v. Miller*, 634 F.3d 841, 843 (5th Cir. 2011).

Lewis concededly did not object at sentencing to the district court's purported reliance on his rehabilitative needs and SES; accordingly, we review these issues for plain error. *United States v. Warren*, 720 F.3d 321, 326 (5th Cir. 2013).

## III.

## A.

We begin with the reasonableness of Lewis's aggregate sentence. The "plainly unreasonable" standard requires that we first consider whether the district court committed procedural error. *Warren*, 720 F.3d at 326. Because the parties do not argue that there was procedural error, we assume without deciding that Lewis's sentence was procedurally proper and next consider his challenges to substantive reasonableness under an abuse-of-discretion standard. *Miller*, 634 F.3d at 843. "A [revocation] sentence is substantively unreasonable if it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Winding*, 817 F.3d 910, 914 (5th Cir. 2016) (alteration in original) (quoting *Warren*, 720 F.3d at 332). "If a sentence is unreasonable, then we consider whether the error was obvious under existing law." *Miller*, 634 F.3d at 843.

Lewis makes various arguments as to substantive unreasonableness. First, he argues that the factors cited by the district court do not reasonably justify the sentence. This argument is unavailing. The revocation hearing transcript suggests that the district court was motivated in large part by Lewis's criminal history, which it reviewed extensively before explaining its decision. It noted that Lewis's repeated violations, combined with his history of assaults, shootings, and batteries, raised "concerns about safety." The court then explained it was supervising him "to keep an eye on him" due to his "significant criminal history; a lot of it violent." Such comments evince a concern for Lewis's criminal history as undergirding the district court's sentencing. Such a justification is substantively reasonable, as criminal history is an appropriate factor for the district court to consider in revoking

supervised release. *See* 18 U.S.C. §§ 3583(e), 3553(a)(1) (allowing consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant"); *see also United States v. Sanchez*, 900 F.3d 678, 683 n.2 (5th Cir. 2018) (noting these allowances). The district court's reliance on Lewis's criminal history reasonably justified the sentence.

Second, Lewis argues that the revocation was substantively unreasonable because the district court considered retribution as a factor in its revocation of Lewis's supervised release. Lewis is correct that district courts cannot consider retribution in a revocation decision. *See Sanchez*, 900 F.3d at 683 (stating that "retribution is off the table when it comes to revocation"). But we are not convinced that the district court erroneously considered retribution as a factor in revoking Lewis's supervised release. In support of his argument, Lewis identifies instances where the district court noted its discomfort with Lewis's repeated violations and chastised Lewis for perceived disrespect. But these comments alone do not require a finding of unreasonableness. "Mere mention of impermissible factors is acceptable; to constitute reversible error, our circuit has said, the forbidden factor must be 'dominant.'" *Id.* at 684 n.5 (quoting *United States v. Rivera*, 784 F.3d 1012, 1017 (5th Cir. 2015)). Here, the district court's isolated references to retribution do not indicate that retribution was the dominant factor in its revocation decision, particularly given the repeated invocations of Lewis's criminal history. Accordingly, Lewis fails to show that the district court improperly considered retribution as a factor in its revocation decision.

Third, Lewis challenges the reasonableness of the location restriction as an unreasonable term of supervised release. But the location restriction—requiring Lewis to get approval to travel outside the Northern District of Texas—was motivated specifically by the fact that Lewis had previously violated this condition during his supervised release term. Given that these prior violations specifically precipitated this restriction, the district court's

sentence was reasonable as "sufficient, but not greater than necessary, to comply with the purposes" of section 3553(a), *Sanchez*, 900 F.3d at 683 (quoting 18 U.S.C. § 3553(a)), which allows courts to consider the "history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1).

Fourth, Lewis challenges the reasonableness of the sentence in light of the "draconian" sentence he received for his underlying crack cocaine offense. This argument also fails. Although Lewis's sentence for this underlying offense was greater than the then-statutory minimum of ten years, his extensive criminal history at that point (including two felonies) made him a career offender. *See* U.S. SENT'G GUIDELINES MANUAL § 4B1.1(b)(2) (U.S. SENT'G COMM'N 2010). Accordingly, the intervening change in law raising the amount of cocaine needed to trigger a mandatory minimum does not necessarily suggest that his above-minimum sentence was inappropriate nor that the district court's revocation was a substantively unreasonable "part of the final sentence for his [underlying] crime." *United States v. Haymond*, 139 S. Ct. 2369, 2380 (2019).

In sum, Lewis has not made the requisite showing of substantive unreasonableness required for us to find reversible error in the district court's decision. The district court properly relied on Lewis's criminal history and, as further discussed below, did not give significant weight to an improper factor.

**B.**

Lewis next argues that the district court erroneously relied on Lewis's rehabilitative needs in violation of *Tapia v. United States*, 564 U.S. 319 (2011). *See also United States v. Garza*, 706 F.3d 655, 657 (5th Cir. 2013) (applying *Tapia* in the revocation context). Accepting this argument would require us to hold that the district court erred by considering rehabilitative needs as a

dominant factor in reaching its sentence. *United States v. Walker*, 742 F.3d 614, 616 (5th Cir. 2014).

A survey of our post-*Tapia* caselaw indicates that we have not applied that case to find error where a district court provided other reasons for its sentencing decision. *See, e.g.*, *United States v. Pillault*, 783 F.3d 282, 290–92 (5th Cir. 2015) (noting that the district court discussed the defendant's work history and his disciplinary record as motivating its desire to protect the public); *Walker*, 742 F.3d at 616–17 (holding that a mention of rehabilitation was a non-dominant concern when this reference came only after discussing the defendant's multiple violations of his release conditions). By contrast, instances where we have applied *Tapia* to find error have involved far clearer instances of the district court's reliance on rehabilitation. *See, e.g.*, *United States v. Wooley*, 740 F.3d 359, 366–69 (5th Cir. 2014) ("[T]he sentencing court repeatedly emphasized Wooley's 'desperate[]' need for treatment and stated explicitly that the 'purpose[]' of the sentence," which was three times higher than the top of the guideline range, "was to allow Wooley to get help for a cocaine problem." (alteration in original)).

For the reasons stated above, we hold that the dominant factor motivating the district court's sentencing decision was Lewis's criminal history. *See supra* Section III.A. We acknowledge that, at points in the record, the district court mentioned Lewis's homelessness. But having reviewed the record in its entirety, we cannot say that these isolated mentions of Lewis's homelessness were a dominant factor in the district court's analysis given its lengthy consideration of Lewis's criminal history. *See Walker*, 742 F.3d at 616–17 (finding that rehabilitation was not a dominant factor "although the district court certainly took rehabilitation into account"); *see also United States v. Terry*, 518 F. App'x 273, 274 (5th Cir. 2013) (finding no *Tapia* error in the district court's mention of defendant's need for a place to live given the court's "statement that it imposed the sentence to provide adequate

deterrence and to protect the public"). This case is more analogous to instances where we have ruled that rehabilitative needs were, at most, an additional justification. And in any case, given the record, we cannot say that Lewis has met the high bar of showing that the district court plainly erred in in a way that "was obvious under existing law." *Miller*, 634 F.3d at 843. Accordingly, we hold that the district court did not impermissibly consider Lewis's rehabilitative needs in violation of *Tapia*.

## C.

Finally, Lewis argues that the district court erred by relying on his SES when imposing the judgment. In doing so, he identifies instances where the district court purportedly grounded its decision on his homelessness in what Lewis describes as the "central focus" of the revocation hearing. For the reasons stated above, this argument fails because Lewis's criminal history was the dominant justification for the district court's revocation. Thus, we hold that the district court did not erroneously consider Lewis's SES in its revocation decision.

## IV.

While we are sympathetic to Lewis's efforts to secure stable housing for himself given his circumstances, he has not shown reversible error by the district court. For the foregoing reasons, we AFFIRM.