RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0272p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

EDGARDO ESTERAS,

*Defendant-Appellant*.

No. 23-3422

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Youngstown.
No. 4:14-cr-00425-10—Benita Y. Pearson, District Judge.

Decided and Filed:  December 20, 2023[*]

Before:  SUTTON, Chief Judge; WHITE and THAPAR, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:**  Christian J. Grostic, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant.  Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

    SUTTON, C.J., delivered the order of the court in which THAPAR, J., joins in full. WHITE, J., joins in the result because she agrees that *United States v. Lewis*, 498 F.3d 393 (6th Cir. 2007) is controlling.

─────────────────

[*]This decision originally issued as a judge order on August 16, 2023.  The court has now designated the amended order for publication.

———————————

**AMENDED ORDER**

———————————

SUTTON, Chief Judge.  Edgardo Esteras appeals the district court's order revoking his supervised release and sentencing him to 24 months in prison.  We affirm the district court's revocation order for the reasons that follow.

In 2018, Esteras pleaded guilty to conspiring to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Varying downward from a guidelines range of 15 to 21 months, the district court sentenced Esteras to 12 months of imprisonment, to be served consecutively with a 15-month prison term for violating his probation for a prior federal drug-trafficking conviction, followed by six years of supervised release.

Esteras's six-year term of supervised release began in January 2020.  Three years later, in January 2023, the probation officer reported to the district court that Esteras had violated the conditions of his supervised release (1) by committing domestic violence, aggravated menacing, and criminal damaging, and (2) by possessing a firearm.  The probation officer notified the district court that the new criminal charges against Esteras had been dismissed at the victim's request.

Judge Benita Y. Pearson conducted a hearing and found that Esteras possessed a firearm while under supervised release.  She "worr[ied]" that her previous sentences for drug crimes and violating an earlier supervised release term failed "to deter [Esteras], to encourage [him] to be respectful of the law."  R.439 at 83.  Based on his "dangerous" and "disrespectful" behavior, she varied upward from an advisory range of six to twelve months to impose a 24-month jail sentence, "long enough to at least allow [Esteras] to reconsider [his] behavior."  *Id.* at 85.  She added three years of supervised release to the sentence, including an anger management class and six months of location monitoring.  These conditions, Judge Pearson explained, would teach him to "do better" and "think before [he] act[s]."  *Id.*

Esteras objected that the court should not have considered the three subfactors identified in 18 U.S.C. § 3553(a)(2)(A) when crafting its sentence: "to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense." *Id.* at 92. Judge Pearson agreed that "part of [her] contemplation certainly is the need for the sentence imposed, to promote respect for the law." *Id.* But she added that she also considered deterrence and community safety, which appear in other statutory provisions. She also referenced her decision to vary upward "to separate Mr. Esteras from the average, typical, mine run-type defendant." *Id.*

In closing the hearing, Judge Pearson expressed hope that Esteras would take advantage of this opportunity. She acknowledged that some of the conventional features of supervised release could be seen as partly "punitive," such as location monitoring and other measures that "restrict [his] freedom" of movement. *Id.* She then referred to other terms, such as anger management, as "there to bolster [him]" and "help [him] to do better going forward." *Id.* at 95–96.

On appeal, Esteras challenges his sentence on the ground that the district court relied on prohibited factors in sentencing him. We disagree.

Congress has authorized district courts to revoke supervised release. *See* 18 U.S.C. § 3583(e). In some settings, district courts have discretion to revoke, modify, or decrease a term of supervised release. *Id.* In other settings, as when a parolee possesses a weapon as Esteras did here, the district court must revoke the individual's supervised release. *Id.* § 3583(g). Whether at the outset of sentencing an individual, in the context of a modified term of supervised release, or in the context of a required revocation of supervised release, Congress has directed courts to consider certain factors. In the words of Congress under the heading "Factors to be considered in including a term of supervised release": "The court . . . consider[s] the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *Id.* § 3583(c); *see also id.* § 3583(e) (similar for "modification of conditions or revocation" of supervised release).

To bring this provision into full view, here is a full recitation of § 3553(a) that italicizes the factors that district courts need not consider in supervised-release determinations:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) *to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense*;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) *the kinds of sentences available*;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such

policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Invoking the italicized language, Esteras claims that § 3583(c) and (e) create a divide between permitted and forbidden supervised-release considerations. As he sees it, a district court judge who considers the forbidden factors—"the seriousness of the offense," "respect for the law," "just punishment for the offense," or "the kinds of sentences available"—necessarily imposes a procedurally unreasonable sentence. Notably, this argument applies to original supervised-release decisions, which come immediately on the heels of any prison-sentence determination under all of the § 3553(a) factors, *see* 18 U.S.C. § 3583(c), as well as to any revocation, modification, or reduction determinations with respect to supervised release, *see id.* § 3583(e), (g).

*United States v. Lewis* rejected this argument. 498 F.3d 393, 399–400 (6th Cir. 2007). It provided two explanations: one textual, one contextual. Textually, *Lewis* observes that § 3583 generally gives courts considerable discretion over supervised-release decisions after considering the listed factors. *Id.* at 400. It never says that the court may consider "*only*" those factors. *Id.* Congress, as it happens, knew how to instruct courts not to consider certain sentencing factors, as shown in its express command to disregard the goal of rehabilitation when imposing prison time. 18 U.S.C. § 3582(a) ("recognizing that imprisonment is not an appropriate means of promoting correction or rehabilitation").

In the context of supervised-release decisions, moreover, *Lewis* was concerned that this proposed bright-line rule was unworkable. Whether in the context of an initial or later supervised-release decision, the purportedly forbidden considerations mentioned in § 3553(a)(2)(A) tend to be "essentially redundant" with the permitted ones. *Lewis*, 498 F.3d at 400. Take § 3553(a)(2)(A)'s consideration about the "seriousness of the offense." It aligns with

§ 3553(a)(1) and its emphasis on "the nature and circumstances of the offense." To think about the one requires the judge to think about the other.

Or take § 3553(a)(2)(A)'s consideration of the need "to promote respect for the law." It meshes with the rationale that revoking supervised release will "help" the defendant "learn to obey the conditions of his supervised release." *Id.* (quoting *Johnson v. United States*, 529 U.S. 694, 709 (2000)). Indeed, in this case, Judge Pearson quite understandably could not see how she could ignore respect for the law but consider a defendant's need to respect the terms of supervised release. To neglect the one dishonors the other.

Or take § 3553(a)(2)(A)'s reference to "just punishment for the offense." Under § 3553(a)(5), courts must consider "any pertinent policy statement" of the Sentencing Commission. Among other guidance, the Commission tells judges to "sanction the violator for failing to abide by the conditions of the court-ordered supervision." *Id.* (quoting U.S.S.G. ch. 7 pt. A § 3(b)). The district court, in other words, must craft a remedy that corresponds to how severely the defendant has breached the court's trust as "embodied by the original sentence," which it cannot do without accounting for the conduct that violated supervised release. *United States v. Johnson*, 640 F.3d 195, 204 (6th Cir. 2011). Another enumerated factor tells a court how to carry out that analysis. Under § 3553(a)(4)(B)'s command to consult the Sentencing Commission's supervised-release guidelines, a court first classifies how "serious" these violations are and then uses the categorization to determine the length of any prison sentence. U.S.S.G. §§ 7B1.1, 7B1.3, 7B1.4.

Esteras's bright-line rule is unworkable in another way. Recall that Congress requires courts to consider the same set of factors when first imposing a term of supervised release as when revoking one. 18 U.S.C. § 3583(c), (e). Under Esteras's rule, if Congress forbade district courts from considering anything related to § 3553(a)(2)(A) at a revocation hearing, it would not permit use of anything related to those factors at an initial sentencing either. How would this work? Would the sentencing judge have to adjourn the hearing after imposing a sentence? Then, would she have to start over with a new unblemished inquiry into the right term of supervised release without any consideration, explicitly or implicitly, of considerations related to, say, the "rule of law"? Congress could not have expected courts to wipe their minds of these

concerns when they move from one type of sentence to the other, and nothing in the statute requires such compartmentalization. If anything, the language points the other way. It specifically allows courts to account for the length of a supervised-release term "in imposing a sentence to a term of imprisonment." *Id.* § 3583(a).

Esteras's invocation of *Tapia v. United States* does not change matters. 564 U.S. 319 (2011). It did not, most critically, arise under this statute. The case dealt with a different sentencing law, one with explicit directions, not uncertain implications. The statute in no uncertain terms says "that imprisonment is not an appropriate means of promoting . . . rehabilitation." 18 U.S.C. § 3582(a). Consistent with that directive, *Tapia* ruled that the statute precludes courts from considering "rehabilitation" when imposing prison time. "Our consideration of Tapia's claim," it reasoned, "starts with the text of 18 U.S.C. § 3582(a)— and given the clarity of that provision's language, could end there as well." *Tapia*, 564 U.S. at 326.

In the course of its analysis, it is true, the Court said in dicta that "a court may *not* take account of retribution" when it "impos[es] a term of supervised release." *Id.* But even taken at face value, this reference does not undermine the district court's sentence. The provision confirms two things. First, when the court imposes an initial supervised-release term, retribution should not guide the decision. No one has shown that Judge Pearson did anything of the sort at that point—and Esteras has not argued otherwise. Second, if the defendant violates a term of supervised release or commits a new crime, the government is put to a choice. If it wishes to exact retribution for the new offense, new charges and the resulting process that comes with it are in order. Otherwise, the district court should focus on non-retributive factors in deciding the new sentence and the new term of supervised release. But the district court in this instance did not claim a right to exact retribution for this violation or for that matter use the word. As shown, references to other concepts mentioned in § 3553(a)(2) are hopelessly over-inclusive, and mere references to things like the "rule of law"—or, worse, concepts that overlap with it—do not create a procedurally unreasonable sentence absent evidence that the court was engaged in imposing a purely retributive sentence. No such evidence exists here. In fact, *Tapia* confirms the point. It ruled for the defendant only after observing that the court's "number one thing

[was] the need to provide treatment" and so may have *increased* the sentence to ensure Tapia was "in long enough to get the 500 Hour Drug Program." *Id.* at 334 (quotations omitted).

This understanding of § 3583(e) accords with the analysis of most other circuits and the outcomes of all of them. The general rule is that courts may invoke factors related to the three general considerations in § 3553(a)(2)(A) without creating a procedurally unreasonable sentence. *United States v. Vargas-Davila*, 649 F.3d 129, 132 (1st Cir. 2011) ("Although section 3583(e)(3) incorporates by reference, and thus encourages, consideration of certain enumerated subsections of section 3553(a), it does not forbid consideration of other pertinent section 3553(a) factors."); *United States v. Williams*, 443 F.3d 35, 48 (2d Cir. 2006) ("[Section] 3583(e) cannot reasonably be interpreted to exclude consideration of the seriousness of the releasee's violation, given the other factors that must be considered."); *United States v. Young*, 634 F.3d 233, 240 (3d Cir. 2011) ("[T]he mere omission of § 3553(a)(2)(A) from the mandatory supervised release revocation considerations in § 3583(e) does not preclude a court from taking [the § 3553(a)(2)(A) factors] into account. To hold otherwise would ignore the reality that the violator's conduct simply cannot be disregarded in determining the appropriate sanction."); *United States v. Webb*, 738 F.3d 638, 642 (4th Cir. 2013) ("[A]lthough a district court may not impose a revocation sentence based predominantly on [the § 3553(a)(2)(A) factors], we conclude that mere reference to such considerations does not render a revocation sentence procedurally unreasonable when those factors are relevant to, and considered in conjunction with, the enumerated § 3553(a) factors."); *United States v. Clay*, 752 F.3d 1106, 1108–09 (7th Cir. 2014) ("[T]his subsection may be considered so long as the district court relies primarily on the factors listed in § 3583(e) . . . . [T]here is significant overlap between these factors and § 3553(a)(2)(A)."); *see also United States v. King*, 57 F.4th 1334, 1338 n.1 (11th Cir. 2023) (acknowledging language in prior cases permitting references to factors that also appear in § 3553(a)(2)(A)).

Esteras's argument, notably, does not even work on its own terms—at least the terms of those circuits that support *some of* his reasoning. The circuits that have described the § 3553(a)(2)(A) factors as impermissible when used punitively still recognize that they may play supporting roles in a district court's analysis. *United States v. Sanchez*, 900 F.3d 678, 684 n.5

(5th Cir. 2018) ("[T]his is not to say that any use of words like 'punish,' 'serious,' or 'respect' automatically renders a revocation sentence void.  Mere *mention* of impermissible factors is acceptable; to constitute reversible error, our circuit has said, the forbidden factor must be 'dominant.'"); *United States v. Porter*, 974 F.3d 905, 907 (8th Cir. 2020) ("Although we have labeled § 3553(a)(2)(A) an improper, irrelevant, or 'excluded' factor, we have not declared its consideration an error of law *and therefore* an abuse of discretion."); *United States v. Simtob*, 485 F.3d 1058, 1063 (9th Cir. 2007) ("[A] district court may properly look to and consider the conduct underlying the revocation as one of many acts contributing to the severity of the violator's breach of trust so as not to preclude a full review of the violator's history and the violator's likelihood of repeating that history."); *United States v. Booker*, 63 F.4th 1254, 1261–62 (10th Cir. 2023) (rejecting the criminal defendant's appeal in a plain-error setting and noting that it would be problematic to rely on a "direct quotation to [two] factors that may not be considered" and as a result issue a "retributive" sentence).  Even under these decisions, Judge Pearson acted properly when she considered the need to promote respect for "the rule of law" alongside the enumerated § 3553(a) factors.  This "highly relevant" concern clearly speaks to the need to deter Esteras's misconduct and protect the public from his disregard of the rule of law, to say nothing of fulfilling the Sentencing Guideline's commentary on sanctioning Esteras for breaching the court's trust.  *Porter*, 974 F.3d at 908–09.  All in all, it is highly doubtful that the outcome in this case would change under any other circuit's decision.

Last of all, Esteras is concerned that Judge Pearson used the word "punishment" during the hearing.  But this reference occurred at the beginning of the sentencing phase of the hearing and simply set the stage.  In her words, "I find that the new law violation" occurred and that she may "consider" "evidence" of it "in the punishment I will issue today."  R.439 at 81.  This manner of speaking at the beginning of a sentencing hearing does not remotely convey an intent to impose a retributive sentence in the context of a gun-possession violation that *required* "punishment"—the revocation of supervised release.  *See* 18 U.S.C. § 3583(g).  Likewise, when the judge later used the word "punitive" in describing the conditions of supervised release, R.439 at 95, it was to ensure that the sentence was not too long—that the "deprivation of [Esteras's] liberty" was "no greater . . . than is reasonably necessary for the purposes set forth" in the enumerated § 3553(a)(2) sections, 18 U.S.C. § 3583(d)(2).  Surely, shorthand references to

"punitive" or "punishment" in the context of ensuring a sentence is not too long do not convey a forbidden focus on retribution.

We **AFFIRM** the district court's revocation order.