# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 22, 2013

No. 12-20203

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

DESRICK VAUGHN-MICHAEL WARREN,

Defendant–Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and BARKSDALE and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

Defendant–Appellant, Desrick Vaughn-Michael Warren, appeals the district court's twenty-four-month sentence for violating two conditions of supervised release. Finding no procedural or substantive error in Warren's supervised release revocation sentence, we AFFIRM.

## FACTS AND PROCEEDINGS

Warren pleaded guilty to one count of possession with intent to distribute phencyclidine ("PCP") in violation of 21 U.S.C. § 841(a)(1). He received a sentence of 110 months of imprisonment, within the guidelines range, followed

No. 12-20203

by a three-year term of supervised release. After serving his prison sentence, Warren commenced supervised release in July 2011. In February 2012, the U.S. Probation Office filed a petition to revoke Warren's supervised release, alleging that Warren had: (1) tested positive for marijuana in February 2012 and subsequently denied using the drug in writing; and (2) failed to participate in drug treatment counseling sessions in October and November 2011. The petition to revoke noted also that in October 2011, the district court previously had taken "no action after Mr. Warren was arrested for possession of marijuana and fail[ed] to report his arrest within 72 hours."

Prior to Warren's revocation hearing, the Probation Office prepared a Sentencing Options Worksheet ("SOW"). The Probation Office determined that Warren's two supervised release violations were Grade C, and that Warren's criminal history category was VI. *See* U.S. SENTENCING GUIDELINES MANUAL §§ 7B1.1(a), 7B1.4(a) (hereinafter "U.S.S.G."). It accordingly found that Warren's statutory maximum sentence was twenty-four months of imprisonment and calculated that Warren's advisory guidelines range was between eight and fourteen months of imprisonment. *See* 18 U.S.C. § 3583(e)(3); U.S.S.G. § 7B1.4(a).

At the revocation hearing, the government recommended the district court revoke supervised release, explaining that to continue Warren's supervised release would be an ineffective use of limited resources. Warren pleaded true to the allegations in the petition to revoke. The court then raised the concern that eleven of nineteen of Warren's urine samples had returned with an invalid result, a separate issue from the positive test forming the basis for count one of the petition to revoke:

No. 12-20203

The Court: [Warren's] not having a hard time. He's not. He's doing exactly what he wants to do. A hard time would be straightening up, flying right, get a job, get up early, work hard, save money, mow your old neighbor's yard. That might be hard. Laying around, buying drug user [sic] is not hard. So the probation—the halfway house doctor took urine samples; is that right?

[Warren]: No, sir.

The Court: That's what you told the probation officer.

[Defense Counsel]: I'm sorry, Your Honor. What are we talking about?

The Court: Well, the probation officer says that . . . his sample [was] not quite right because the halfway house's doctor, the problem was the probation officer took the sample. But out of 19 samples, 11 of them were irregular?

[Defense Counsel]: Your Honor, I don't believe that's one of the allegations. I mean, if we're going to go forward on that, then I would ask for more time to get prepared for that.

The Court: To get prepared to do what?

[Defense Counsel]: I'm just saying I don't think that that was one of the allegations[.]

The Court: It's not one of the counts, counsel, but it's part of his behavior while on probation.

[Defense Counsel]: I understand, Your Honor.

The Court: That's the problem. He's belligerent, he's uncooperative, and I don't know exactly how it works, but apparently he's using something that distorts the quality of his urine before the urine test. I don't know anything about that, but he's gaming the system because he doesn't want to do what he's supposed to do.

3

No. 12-20203

Under questioning from the court, Warren admitted that he had successfully abstained from drugs while in prison but that he returned to using them on supervised release. The court admonished Warren that he was to blame for his relapse: "You didn't have an addiction. You had a choice. Temptation is a choice." The court added that "[w]e spent a fortune trying to help you straighten out." Warren's counsel responded that he understood the court's position and agreed that Warren "had opportunities to straighten up, and that he is [sic] not availed himself of those opportunities." He asked the court to consider giving Warren a second chance on supervised release with inpatient treatment, with the understanding that the court could impose the maximum sentence for any subsequent violation. In a frank and affirmative dialogue, counsel explained to the court:

> I think that you're getting the point across to him in maybe a way that has not been done before . . . . That's initially what probation wanted to do with him, was to put him in inpatient treatment because they recognize that he does have a drug problem. He was not willing to admit it at that time. He came in here today prepared to admit after a heart-to-heart, and I think the Court has gotten that message across even stronger.

The court responded, however, that Warren had already been unsuccessful in substance-abuse treatment on supervised release. After hearing directly from Warren, the court asked:

> The Court: When did the probation office first receive the urine sample with traces of drugs from you?
>
> . . . .
>
> [Warren]: It says local results and it says NLT results.

No. 12-20203

> Probation Officer: First confirmed uranalysis [sic] positive was on February 1st [2012], Your Honor.  There were numerous [other] urinalysis [sic] that were taken that came back with invalid results.

> The Court: And you get invalid results either because you're physically ill or you've done something to help invalidate them.

Warren's counsel later reiterated the request for continued release paired with inpatient treatment, and, in the alternative, a revocation sentence of six months with no additional supervised release.

The district court sentenced Warren to the statutory maximum term of twenty-four months in prison with no additional term of supervised release. Warren's counsel responded that "[t]o the extent that the sentence is outside the guidelines range, we will object, and also to the extent that the Court did consider some information that we had not given notice of, specifically—," before the court interjected.  The court stated: "You have no evidence that he was cooperative, that he did not turn in 11 inconclusive out of 19.  It doesn't matter what the numbers are.  Six months he was out before he started missing—getting caught misbehaving."  Warren timely appealed.  *See* FED. R. APP. P. 4(b).

## STANDARD OF REVIEW

When the defendant properly preserves his objection for appeal, *see* FED. R. CRIM. P. 51(b), we review a sentence imposed on revocation of supervised release under a "plainly unreasonable" standard, in a two-step process. *United States v. Miller*, 634 F.3d 841, 843 (5th Cir.), *cert. denied*, 132 S. Ct. 496 (2011). First, we "ensure that the district court committed no significant procedural error, such as failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence,

including failing to explain a deviation from the Guidelines range." *United States v. Kippers*, 685 F.3d 491, 497 (5th Cir. 2012) (internal quotation marks omitted). "If the district court's sentencing decision lacks procedural error, this court next considers the substantive reasonableness of the sentence imposed." *Id.* If we find the sentence unreasonable, we may reverse the district court only if we further determine "the error was obvious under existing law." *Miller*, 634 F.3d at 843.

When the defendant fails to bring a sufficient objection to the attention of the district court, we may correct an unpreserved "plain error that affects substantial rights." FED. R. CRIM. P. 52(b); *Henderson v. United States*, 133 S. Ct. 1121, 1124 (2013). However, under plain error review, the defendant bears the burden to show "(1) error (2) that is plain and (3) that affects his substantial rights." *United States v. Broussard*, 669 F.3d 537, 553 (5th Cir. 2012) (internal quotation marks omitted). "To be 'plain,' legal error must be clear or obvious, rather than subject to reasonable dispute." *Id.* (internal quotation marks omitted). We assess the error's plainness based on the law "applying at the time of review." *Henderson*, 133 S. Ct. at 1127. "To affect the defendant's substantial rights, the defendant must demonstrate that the error affected the outcome of the district court proceedings." *Broussard*, 669 F.3d at 553. Even if the defendant succeeds in making that showing, we exercise our discretion to correct the error only "if it seriously affected the fairness, integrity, or public reputation of the judicial proceeding." *Id.* (internal quotation marks omitted).

## DISCUSSION

Warren urges us to vacate his sentence and remand for resentencing on the basis that the district court procedurally erred, in failing to provide advance

notice that it would invoke the eleven invalid urine samples at sentencing, and substantively erred, in relying on improper considerations in assessing its twenty-four month sentence.

## I.     Procedural Unreasonableness

Warren argues that his sentence is procedurally unreasonable because the district court considered the invalid urine samples at revocation sentencing without forewarning.  Warren argues that the failure to provide him notice violated both Federal Rule of Criminal Procedure 32.1 and the Fifth Amendment's Due Process Clause.

### A.     Preservation of Error for Appeal

Preliminarily, the government suggests our procedural unreasonableness review should be for plain error only.  To preserve an error for appeal, Federal Rule of Criminal Procedure 51(b) requires that the appellant, if given the opportunity to object in district court, have made "an objection . . . sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009); *see* FED. R. CRIM. P. 51(b).  Warren's counsel twice emphasized the concern that the district court was relying on the invalid urine samples without pre-hearing notice, both before and after the court pronounced sentence.  That measure of objection sufficed to alert the court to Warren's alleged legal error, and the court proceeded, in both instances, to provide brief reasoning rejecting the argument.  We apply the normal, "plainly unreasonable" standard of review discussed *infra.  See Miller*, 634 F.3d at 843.

No. 12-20203

### B.    Lack of Pre-Sentencing Notice of Invalid Urine Samples

The parties point to no authority, nor have we discovered any, that resolves whether pre-hearing notice is required for all facts on which the district court may rely at revocation sentencing. *See United States v. Hall*, 383 F. App'x 412, 414 (5th Cir. 2010) (unpublished) (observing that "it is not clear that the district court would have erred by relying on uncharged conduct in deciding how to *sentence* Hall for violating the terms of his supervised release") (emphasis in original).

Federal Rule of Criminal Procedure 32.1 governs supervised release and probation revocation proceedings. Rule 32.1 delineates, at times extensively, procedural requirements at each stage in the revocation process. *See* FED. R. CRIM. P. 32.1(a) (applying to initial appearances); *id.* 32.1(b)(1) (applying to preliminary hearings); *id.* 32.1(b)(2) (applying to final revocation hearings); *id.* 32.1(c) (applying to modifications of the terms of probation or supervised release); *id.* 32.1(d) (applying to "Disposition of the Case"). Under Rule 32.1(b)(2)(B), the defendant is entitled to "disclosure of the evidence against the person" prior to the court's determination that the defendant *violated* a condition of supervised release. FED. R. CRIM. P. 32.1(b)(2)(B); *see Hall*, 383 F. App'x at 414. Rule 32.1 makes no clear provision for notice of information, however, relevant to revocation *sentencing. See* FED. R. CRIM. P. 32.1(b)(2). In that regard, Rule 32.1 stands in notable contrast to Rule 32, which requires and elaborates extensive, pre-hearing notice mechanisms for information at *original sentencing. Compare id.* 32.1, *with id.* 32.[1]

---

[1] Rule 32 requires the Probation Office generally to prepare a presentence report ("PSR") that, among other things, "identif[ies] any factor relevant to" the appropriate guidelines range sentence or a departure from the guidelines range. FED. R. CRIM. P.

No. 12-20203

Rule 32.1(d), concerning "Disposition of the Case," is the only portion of Rule 32.1 that relates specifically to *revocation* sentencing, referencing 18 U.S.C. § 3583's rules for supervised-release sentencing. *See* FED. R. CRIM. P. 32.1(d) ("The court's disposition of the case is governed by 18 U.S.C. § 3563 and § 3565 (probation) and § 3583 (supervised release)."); 18 U.S.C. § 3583. Section 3583(e), which covers discretionary modifications or revocations of supervised release, permits courts to revoke supervised release and sentence defendants to a sentence within the applicable statutory maximum, after considering a specified collection of the sentencing factors listed in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3583(e)(3); *United States v. Recesky*, 699 F.3d 807, 809 (5th Cir. 2012). Section 3583(g), without mention of the § 3553(a) factors, mandates the court impose a term of imprisonment upon revocation when the defendant violates conditions of supervised release in committing certain drug or firearms violations. *See* 18 U.S.C. § 3583(g); *United States v. Mathena*, 23 F.3d 87, 91 (5th Cir. 1994). No provision requires, or addresses, pre-hearing notice of sentencing considerations. In fact, we have held that no advance notice is required when the district court sentences a revocation defendant above the recommended range to a statutory-maximum term. *Mathena*, 23 F.3d at 93 n.13.

---

32(d)(1)(D), (E).     The Probation Office typically must provide a copy of the PSR to the defendant, the defense attorney, and the government at least thirty-five days prior to sentencing. *Id.* 32(e)(2). The parties may then file any objections to the PSR within fourteen days of receipt, and the probation officer may meet with the parties to address their objections and revise the PSR if necessary. *Id.* 32(f). The rules further direct the judge at sentencing to "verify that the defendant and the defendant's attorney have read and discussed the [PSR] and any addendum to the report." *Id.* 32(i)(1)(A). If the court "will rely in sentencing" on certain categories of confidential information excluded by rule from the PSR, it "must give to the defendant and an attorney for the government a written summary of—or summarize in camera—any information excluded . . . and give them a reasonable opportunity to comment on that information." *Id.* 32(i)(1)(B).

No. 12-20203

The U.S. Sentencing Commission also has not promulgated a pre-sentencing notice rule.    Congress tasked the Commission with crafting "guidelines or general policy statements regarding the appropriate use" of discretionary supervised release revocation proceedings under § 3583(e).    28 U.S.C. § 994(a)(3).    The Commission opted to discharge that duty with the "policy statements," as opposed to sentencing "guidelines," found in Chapter Seven of the U.S. Sentencing Guidelines Manual.    U.S.S.G. ch.7, pt. A, introductory cmt. 1.    The policy statements give district courts considerable discretion.  Unlike the guidelines ranges applicable in original sentencing, even prior to the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005) (holding that the then-extant regime of mandatory, original sentencing guidelines violated the Sixth Amendment in permitting sentencing enhancement based on facts found by a sentencing judge by a preponderance of the evidence, and remedying the constitutional problem by severing provisions making the guidelines mandatory), revocation policy statement sentencing ranges were advisory from their inception.  *See United States v. Hernandez–Martinez*, 485 F.3d 270, 273 (5th Cir. 2007).    Moreover, Chapter Seven's policy statements, while discussing the purposes of revocation sentencing and providing instruction on calculating recommended revocation-sentencing ranges, do not address pre-hearing notice and opportunity to comment on factors relevant to the district court's sentencing determination. *See* U.S.S.G. ch. 7.  Instead, they describe that the present system of supervised release revocation, unlike original sentencing, rests on a theory of "sanction[ing] primarily the defendant's breach of trust" and "taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."    U.S.S.G. ch.7, pt. A,

introductory cmt. 3(b); *see Miller*, 634 F.3d at 843 ("[T]he goal of revocation is to punish a defendant for violating the terms of the supervised release. . . . [T]his aim differs from the objectives outlined for the imposition of an original sentence."); *United States v. Crudup*, 461 F.3d 433, 437–38 (4th Cir. 2006). In that vein, "unlike original sentences that have a guidelines range and a separate statutory maximum, the statutory maximum sentence for supervised release revocation sentences is directly tied to the original term of supervisory release." *Crudup*, 461 F.3d at 438. Those features, differentiating revocation from original sentencing, help illustrate "that the Sentencing Commission intended to give district courts substantial latitude in devising revocation sentences for defendants who violate the terms of supervised release." *Miller*, 634 F.3d at 843 (internal quotation marks omitted); *Gagnon v. Scarpelli*, 411 U.S. 778, 788–89 (1973) ("[T]here are critical differences between criminal trials and probation or parole revocation hearings, and both society and the probationer or parolee have stakes in preserving these differences."). In light of many of those same considerations, we apply a more deferential, "plainly unreasonable" standard of review to revocation sentences than the "reasonableness" review for original sentences. *See Miller*, 634 F.3d at 842–43; *Hernandez–Martinez*, 485 F.3d at 273–74.

The concept of relatively informal revocation sentencing, and the absence of a codified, pre-sentencing-notice rule, draws from the Supreme Court's seminal decisions on the constitutional parameters of revocation proceedings, *Morrissey v. Brewer*, 408 U.S. 471 (1972) and *Gagnon*, 411 U.S. 778, on which Rule 32.1 is based, *see United States v. Tham*, 884 F.2d 1262, 1265 (9th Cir. 1989). In *Morrissey*, a parole revocation case, the Court held that a defendant

11

No. 12-20203

facing revocation is not owed "the full panoply of rights due a defendant in" a criminal prosecution. *Morrissey*, 408 U.S. at 480; *see United States v. Grandlund*, 71 F.3d 507, 510 n.5 (5th Cir. 1995) ("[T]he same due process rights granted to those facing revocation of parole are required for those facing revocation of supervised release."). As the Court reasoned, "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey*, 408 U.S. at 480.

The Court confirmed, however, that "some orderly process" governs revocation, given the valuable liberty interest still at stake. *Id.* at 482. In elucidating the protections that apply, the Court centered on the "two important stages" in the revocation process—the initial hearing to determine cause to detain the defendant and the final revocation hearing to determine whether the facts warrant revocation. *Morrissey*, 408 U.S. at 485–88; *Gagnon*, 411 U.S. at 781–82 (applying the rule announced in *Morrissey* to probation revocation). In contrast, the Court provided comparatively little discussion of revocation sentencing and enumerated no additional, constitutionally-mandated procedure. Rather, the Court referenced how revocation sentencing is "more complex," and that, unlike determining whether a violation permitting revocation occurred, "deciding what to do about the violation once it is identified, is not purely factual but also predictive and discretionary." *Morrissey*, 408 U.S. at 480. "The factors entering into these decisions relate in major part to a professional evaluation, by trained probation or parole officers, as to the overall social readjustment of the offender in the community, and include consideration of" a number of variables as well as "whether there have been specific and significant violations

of the conditions of the probation or parole." *Gagnon*, 411 U.S. at 784 n.8. The Court described that "[w]hat is needed is an *informal* hearing structured to assure that *the finding of a parole violation* will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Morrissey*, 408 U.S. at 484 (emphases added); *see Gagnon*, 411 U.S. at 781–82.

Fitting as it does within constitutional bounds, Congress's judgment of criminal justice policy is not ours to gainsay. Nor, for that matter, do we expect the present framework typically to be at odds with the defendant's interest in an individualized revocation sentence predicated on careful attention to mitigating factors. It may often be the defendant who wishes to raise arguments for revocation leniency for the first time when he addresses the court. Even here, Warren's attorney welcomed the district court's free and candid exchange with Warren, emphasizing that the court's frank counsel might spur his client to reform and avert the need for a harsh sentence. We conclude that there is no constitutional or statutory basis, and no recommendation by the U.S. Sentencing Commission, on which to find error when the district court engages in the "predictive and discretionary" task of revocation sentencing, *Morrissey*, 408 U.S. at 480, by referencing without prior notice conduct that, as the district court here stressed, was "part of [Warren's] behavior while on" supervised release.

There are, of course, other legal limits on the district court's sentence imposition discretion at revocation sentencing. Most relevant, Warren invokes our settled law that "[s]entences based upon erroneous and material information or assumptions violate due process." *United States v. Tobias*, 662 F.2d 381, 388 (5th Cir. Unit B Nov. 1981) (holding an original sentence invalid under plain

error review when the district court relied primarily on the large quantity of chemicals undercover agents supplied to the defendant to manufacture PCP and there was no evidence the defendant independently requested a specific quantity of chemicals or intended to manufacture a certain amount of PCP); *cf. Townsend v. Burke*, 334 U.S. 736, 740–41 (1948) (determining, on habeas corpus review, that an original sentence was constitutionally invalid when the defendant was not represented by counsel at sentencing and the state judge relied on "materially untrue" assumptions of the defendant's criminal history in imposing sentence). That principle extends equally in revocation sentencing as it does in original sentencing; it is procedural error at revocation sentencing to "select[] a sentence based on clearly erroneous facts." *Kippers*, 685 F.3d at 497; *see United States v. Perez*, 460 F. App'x 294, 302 (5th Cir. 2012) (unpublished) (explaining, after deciding to vacate and remand on other grounds, that the district court would have procedurally erred if it had imposed a revocation sentence in reliance on conduct charged in the revocation petition but to which the defendant did not plead true and concerning which the court declined to hear the government's supporting evidence); *see also United States v. Lazo–Martinez*, 460 F. App'x 879, 883 (11th Cir. 2012) (unpublished) (finding procedural error, applying a "reasonableness" review, in the district court's reliance for revocation sentencing on the government's unsupported statement that in violating the conditions of his supervised release by committing grand theft of a boat, the defendant had returned to the same criminal enterprise, alien smuggling, for which he was convicted originally); *cf. United States v. Berry*, 583 F.3d 1032, 1034 (7th Cir. 2009) (upholding the defendant's revocation sentence against the challenge that it was based on clearly erroneous factual findings). In raising that due process

argument, the burden is on the defendant "to demonstrate that the district court relied on materially untrue information." *United States v. Mueller*, 902 F.2d 336, 347 (5th Cir. 1990).

To the extent Warren argues that the district court's reference and discussion of the invalid test results were erroneous and material, he does not make the required showing. Neither at sentencing nor in his appellate briefing does Warren contest the accuracy of the district court's statement that eleven of his urine samples yielded invalid results. Indeed, one can read the sentencing transcript to suggest that, regardless of whether Warren's counsel knew in advance of the invalid urine samples, Warren himself did, responding to the district court's comment by referencing his "NLT [National Laboratory Testing] results." Nor do we conclude that Warren has shown that the court's consideration of the invalid urine samples was material to Warren's sentence. *See Tobias*, 662 F.2d at 388. While the district court referred several times to the invalid urine samples, the court closed the hearing by resting on Warren's admitted, positive test result in February 2012: "It doesn't matter what the numbers are. Six months he was out before he started missing—getting caught misbehaving." Relatedly, Warren himself acknowledged that he had gotten "caught in [his] old rut."

We hold that the district court was not required, by Federal Rule of Criminal Procedure 32.1 or the Due Process Clause, to provide Warren with pre-sentencing notice of all points raised in the revocation sentencing colloquy, here especially noting the invalid urine samples. Warren also does not show that the district court relied on materially erroneous information in pronouncing sentence. We find no procedural error in Warren's revocation sentence.

No. 12-20203

## II.    Substantive Unreasonableness

The district court sentenced Warren to the statutory maximum of twenty-four months, ten months above the upper end of the eight-to-fourteen month range recommended by the policy statement at U.S.S.G. § 7B1.4(a).  We review a preserved objection to a sentence's substantive reasonableness for an abuse of discretion, examining the totality of the circumstances.  *United States v. Fraga*, 704 F.3d 432, 439–40 (5th Cir. 2013); *see Miller*, 634 F.3d at 843.[2]  "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."  *Gall v. United States*, 552 U.S. 38, 51 (2007) (internal quotation marks omitted).  Our deferential review is informed by the knowledge that "[t]he sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court."  *Id.* at 51–52 (internal quotation marks omitted).  A sentence is substantively unreasonable if it "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors."  *United States v. Peltier*, 505 F.3d 389, 392 (5th Cir. 2007) (internal quotation marks omitted).

Warren argues his sentence is substantively unreasonable because the district court gave no weight to the § 7B1.4 recommended sentencing range, and rested its sentence in part on the unfounded assumptions that Warren's drug

---

[2] As described above, even if we were to hold that the sentence was substantively unreasonable as an abuse of the district court's discretion, under our "plainly unreasonable" standard of review, we would vacate the sentence only if the district court's "error was obvious under existing law."  *Miller*, 634 F.3d at 843–44.

use was not the product of addiction and that Warren was not intelligent, motivated, or cooperative.

At sentencing, Warren objected that his sentence was above the guidelines range, but he made no objection on the specific grounds he now raises.  Our review, therefore, is for plain error.  *See Hernandez–Martinez*, 485 F.3d at 272 ("Hernandez is incorrect that simply asking the court to sentence him within the Guidelines preserves an argument of specific legal error.").  "We have routinely affirmed revocation sentences exceeding the advisory range, even where the sentence equals the statutory maximum." *United States v. Casey*, 340 F. App'x 199, 200 (5th Cir. 2009) (unpublished); *see United States v. Whitelaw*, 580 F.3d 256, 265 (5th Cir. 2009) (holding it was not plain error for the district court to sentence the defendant to a thirty-six-month, statutory-maximum sentence on revocation of supervised release, despite a § 7B1.4 range of four to ten months); *United States v. Jones*, 484 F.3d 783, 792–93 (5th Cir. 2007) (holding same for a statutory-maximum, twenty-four-month sentence when the recommended range was between six and twelve months, but vacating and remanding for clarification on separate grounds); *Mathena*, 23 F.3d at 89, 93–94 (finding the defendant's revocation sentence, at a statutory-maximum, thirty-six months, was not plainly unreasonable where the applicable § 7B1.4 range was between six and twelve months).

Warren does not persuade us his case warrants a different result.  The district court did not make explicit reference at the hearing to the policy statement sentencing range in U.S.S.G. § 7B1.4(a).  Nonetheless, we find in that omission no plain error that affected Warren's substantial rights, as the district court extensively discussed the unique factors in Warren's case it believed

supported a higher sentence, and Warren points to no suggestion in the record that had the court placed emphasis on the policy statement range it would have handed down a lesser sentence. *See United States v. Caton*, 430 F. App'x 327, 329 (5th Cir. 2011) (unpublished); *Broussard*, 669 F.3d at 553.

Beyond the district court's frustration with Warren for failing repeatedly to avail himself of the opportunities supervised release afforded him to correct his behavior, the district court adverted to, and the petition to revoke was founded upon, a substantial collection of undisputed facts supporting the punishment meted out, including: Warren's failure to attend or to benefit from substance abuse counseling; his positive urine sample well within one year of release from prison and his subsequent written denial to the Probation Office that he had used marijuana; his prior arrest for marijuana possession, and his failure to report it to the Probation Office within seventy-two hours, on which the court refrained from acting; and the assessment that Warren had refused to admit he had a drug problem and turned down residential drug treatment. The district court made clear its belief that, in light of Warren's particular history, only a relatively severe, incarcerative revocation sentence was sufficient punishment.

## CONCLUSION

We conclude the district court's revocation sentence does not warrant reversal, as either procedurally or substantively unreasonable, hence we AFFIRM.