# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 11, 2026

Lyle W. Cayce
Clerk

No. 25-10497

United States of America,

*Plaintiff—Appellee*,

*versus*

Charles Lee Kruse,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:18-CR-135-1

Before Southwick, Willett, and Ho, *Circuit Judges*.

Per Curiam:[*]

Charles Lee Kruse violated the conditions of his supervised release. Following revocation, the district court sentenced Kruse to 24 months of imprisonment and a life term of supervised release. Kruse argues the district court erred by relying on previously undisclosed facts at the revocation sentencing, that his revocation sentence is plainly unreasonable, and that the

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

term of supervised release imposed in the written judgment is ambiguous. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Kruse pled guilty to possession of child pornography in 2019. He was sentenced to 97 months of imprisonment and 15 years of supervised release. His term of supervised release began on September 27, 2024.

In 2025, Kruse's probation officer filed a petition to revoke his supervised release, alleging he violated the conditions prohibiting him from having a computer or contacting a convicted felon without permission from the probation officer. According to the petition, Kruse told his probation officer he had built a computer, without prior permission, to play games online with his mother. He also exchanged text messages with Shawn Paschal, whom he met while incarcerated and who was on supervised release for conduct like Kruse's. The probation officer calculated a policy-statement range of three to nine months of imprisonment and stated the maximum supervised-release term was life, minus the revocation sentence. *See* 18 U.S.C. § 3583(h).

Kruse did not oppose the petition to revoke. He submitted a memorandum requesting a sentence of three-months imprisonment. In arguing that neither of his violations was severe, he asserted that (1) he did not seek prior permission to build the computer because he wanted to ensure it worked before notifying his probation officer; (2) he self-reported the computer, on which no prohibited content existed; and (3) the extent of his communication with Paschal was a text message stating "woot" in response to a text from Paschal regarding an audiobook containing no prohibited content. Kruse also cited several factors that he argued warranted leniency, including his maintaining gainful employment, participation in mental-health and sex-offender counseling, compliance with drug and alcohol testing,

sharing a home with his mother, and compliance with other supervised-release conditions.

At the revocation hearing, Kruse pled true to both allegations. Proceeding to sentencing, the district court found that the policy-statement range was three to nine months of imprisonment and that the maximum supervised-release term was "life, minus revocation sentence." Kruse reiterated the arguments in his sentencing memorandum and requested a sentence of three months of imprisonment followed by 15 years of supervised release. The Government requested nine months of imprisonment and 15 years of supervised release. The court announced a sentence of 24 months of imprisonment and a life term of supervised release. The court explained that the sentence was justified by the need to promote respect for the law, deter criminal conduct, and protect the public from further crimes by Kruse. *See* 18 U.S.C. § 3533(a). It also stated that, in a report referred to as "the blue sheet," the probation officer wrote that Kruse had been advised twice that he could not build a computer without prior permission and that he continued "to express a desire to place himself into high-risk situations and associate with individuals in similar situations and to consume alcohol, which is a trigger to child sexual exploitation material . . . consumption." That information was "relayed by the sex offender counselor consulted by the probation officer and relayed through the blue sheet to the Court."

The written judgment stated, in relevant part, that Kruse is "to be imprisoned for a term of Twenty-Four (24) months" and "shall be placed on supervised release for a term of life, minus revocation sentence." Kruse timely appealed his sentence.

## DISCUSSION

Kruse argues that the district court erred by relying on previously undisclosed facts at the revocation sentencing, his revocation sentence is

plainly unreasonable, and the term of supervised release imposed in the written judgment is ambiguous.

## I.   *Whether Sentence is Plainly Unreasonable*

We begin with Kruse's claims that the district court erred by relying on previously undisclosed facts at the revocation sentencing and that his sentence is plainly unreasonable.  To review a sentence imposed upon revocation of supervised release, this court employs a two-step process "under a plainly unreasonable standard."  *United States v. Foley*, 946 F.3d 681, 685 (5th Cir. 2020) (quotation omitted).  First, this court ensures the district court did not commit a significant procedural error.  *Id.*  Second, if the district court's sentencing decision is procedurally sound, this court considers the substantive reasonableness of the sentence under an abuse of discretion standard.  *Id.*

Even if this court concludes the revocation sentence is unreasonable, it may vacate only "if the error is obvious under existing law, so that the sentence is not just unreasonable but is *plainly* unreasonable."  *Id.* (quotation omitted).  This standard is "more deferential" than the general standard for reviewing the reasonableness of criminal sentences, and this court has observed that "the Sentencing Commission intended to give district courts substantial latitude in devising revocation sentences."  *United States v. Miller*, 634 F.3d 841, 843 (5th Cir. 2011) (quotation omitted).

### A. *Procedural Reasonableness*

Kruse contends the district court erred by relying at sentencing on facts contained in the undisclosed blue sheet.  He asserts this violated Federal Rule of Criminal Procedure 32.1 and his Fifth Amendment right to due process.  Although he does not expressly characterize these claims as challenging the procedural reasonableness of his sentence, this court has analyzed similar claims under the first step of the "plainly unreasonable"

standard, and we do the same here. *See, e.g.*, *United States v. Warren*, 720 F.3d 321, 327–31 (5th Cir. 2013) (applying procedural reasonableness framework to defendant's claims that reliance on undisclosed facts at revocation sentencing violated Rule 32.1 and due process).

Kruse did not object on these grounds in the district court. Unpreserved challenges to the procedural reasonableness of a revocation sentence are reviewed for plain error. *United States v. Whitelaw*, 580 F.3d 256, 259 (5th Cir. 2009). Kruse contends plain-error review should not apply because he did not have a meaningful opportunity to object to the court's reliance on the blue sheet, given that the court did not mention it until after pronouncing the sentence. After pronouncing the sentence and mentioning the blue sheet, however, the district court explicitly asked if there was "[a]nything further from the defendant." Because Kruse did not take that opportunity to object, we conclude plain-error review applies. *See also United States v. Johnson*, 956 F.3d 740, 743 (5th Cir. 2020) (applying plain-error review to unpreserved claim that district court improperly considered probation officer's confidential report first mentioned by court at defendant's original sentencing).

To succeed on plain-error review, Kruse must show a forfeited error that is clear or obvious and that affected his substantial rights. *See* FED. R. CRIM. P. 52(b); *Puckett v. United States*, 556 U.S. 129, 135 (2009). If he makes that showing, this court has discretion to correct the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (alteration in original) (quotation omitted).

Kruse contends the district court erred by relying at sentencing on facts contained in the undisclosed blue sheet. In explaining the revocation sentence, the court cited previously undisclosed allegations that Kruse

"continues to express a desire to place himself into high-risk situations and associate with individuals in similar situations and to consume alcohol, which is a trigger to child sexual exploitation material . . . consumption." According to Kruse, he did not have a chance to contest or mitigate the allegations because the court did not mention the blue sheet until after it imposed the sentence. He also argues that due process requires, before a court imposes a sentence, that it give the defendant notice of the facts it considered in deciding that sentence.

The Government responds that Kruse cannot establish any clear or obvious error given this court's decision in *Warren*. *See* 720 F.3d at 326–27. That case addressed "whether pre-hearing notice is required for all facts on which the district court may rely at revocation sentencing." *Id.* at 327 (citation omitted). There, the district court revoked Warren's supervised release because he pled true to the allegation that he had tested positive for marijuana. *Id.* at 324–25. At the revocation hearing, the district court and Warren discussed both the basis for revocation — Warren's positive drug test — and a distinct issue: Warren's submission of 11 invalid urine samples, which suggested improper interference by him. *Id.* at 325–26. The Probation Office informed the district court of the possible interference but did not mention it in the revocation petition. *Id.* The district court imposed the statutory-maximum term of supervised release. *Id.* at 326.

On appeal, this court discussed the "notable contrast" between the Federal Rules of Criminal Procedure's elaboration of "extensive, pre-hearing notice mechanisms for information at original sentencing" and its lack of any "clear provision for notice of information . . . relevant to revocation sentencing." *Id.* at 328 (emphasis omitted). Holding for the Government, this court concluded that "there is no constitutional or statutory basis, and no recommendation by the U.S. Sentencing Commission, on which to find error when the district court engages in the

predictive and discretionary task of revocation sentencing by referencing without prior notice conduct that . . . was part of" the defendant's "behavior while on supervised release." *Id.* at 330 (quotation omitted).

*Warren* controls Kruse's case. The district court did not err by referencing a fact regarding Kruse's behavior while on supervised release that the Probation Office had communicated directly to the court. Kruse attempts to distinguish *Warren* because there, unlike here, the district court discussed the factual issue before pronouncing the revocation sentence; hence, Warren at least had some notice, opportunity to be heard, and "disclosure of the evidence against the person" before the choice of sentence. Fed. R. Crim. P. 32.1(b)(2)(B); *see* 720 F.3d at 327. *Warren*'s reasoning, however, did not turn on a distinction between notice provided before versus after the pronouncement of a sentence, and we see no reason to make such a distinction either. Rather, *Warren* relied on the lack of authority prohibiting courts from referring at revocation sentencings to any previously undisclosed facts conveyed by the Probation Office. *See* 720 F.3d at 330. Its logic thus applies squarely here. Furthermore, regarding the right to "disclosure of the evidence against the person" that Kruse cites, *Warren* aptly observed that this provision refers to a district court's "determination that the defendant *violated* a condition of supervised release," and is not "relevant to revocation *sentencing.*" *Id.* at 328 (citing Fed. R. Crim. P. 32.1(b)(2)(B)).

It is true that *Warren* acknowledged "it is procedural error at revocation sentencing to" impose "a sentence based on clearly erroneous facts." *Id.* at 331 (quotation omitted). Here, though, Kruse does not make such a showing regarding the information that the district court referenced. As in *Warren*, "[n]either at sentencing nor in his appellate briefing does" Kruse "contest the accuracy of the district court's statement that" he expressed a desire to place himself into high-risk situations, associate with

individuals convicted of similar offenses, and consume alcohol. *Id.* Therefore, we find no procedural error in Kruse's revocation sentence.

### B. *Substantive Reasonableness*

In determining whether a sentence is plainly unreasonable, we analyze its substantive reasonableness under an abuse of discretion standard. *Foley*, 946 F.3d at 685. "A sentence is substantively unreasonable if it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *Id.* (quotation omitted).

Kruse contends his sentence is substantively unreasonable because it represents a clear error of judgment in balancing the sentencing factors. He asserts that his violations were not serious and did not subject him to independent criminal or civil liability, his self-reporting of the computer demonstrated a desire to reform, and his successful employment and compliance with substance-abuse testing showed a severe sentence was unwarranted. Kruse also contends the extent of the upward variance is unreasonable, especially considering it exceeded the Government's sentence recommendation.

The district court, however, did not abuse its discretion in deciding that an above-Guidelines sentence was justified. That is because building a computer and communicating with another felon who had previously possessed child pornography constituted serious transgressions by Kruse, whose original offense involved using a homemade computer to possess child pornography. Additionally, Kruse had recently agreed to a modification of his conditions to require approval for computer use, giving the district court further grounds to conclude, as it did, that his violation was a "blatant" one constituting "a serious and egregious breach of trust." The district court

acted within its "substantial latitude in devising revocation sentences" by finding that these factors outweighed Kruse's self-reporting of the computer, successful employment, and compliance with substance-abuse testing. *Miller*, 634 F.3d at 843 (quotation omitted).  Although Kruse may disagree with the district court's balancing of the factors, he fails to establish an error that "is obvious under existing law, so that the sentence is not just unreasonable but is *plainly* unreasonable." *Foley*, 946 F.3d at 685 (quotation omitted).

We "have routinely affirmed revocation sentences exceeding the advisory range, even where the sentence equals the statutory maximum." *Warren*, 720 F.3d at 332 (collecting cases); *see United States v. Walker*, 742 F.3d 614, 617 (5th Cir. 2014); *United States v. Montes*, 764 F. App'x 409, 410 (5th Cir. 2019) (unpublished).  Kruse does not demonstrate that his case justifies different treatment.

## II.    *Ambiguity of Supervised-Release Sentence*

Kruse also argues the supervised-release term imposed in the written judgment — life, minus the 24-month post-revocation imprisonment — constitutes an illegal sentence because it is ambiguous.  He asserts that, because his life expectancy is unknown, it is impossible to calculate a date that is 24 months before his death; therefore, he contends, the end date of his supervised-release term is uncertain.

The parties disagree on whether the standard of review is *de novo* or plain error.  This court need not resolve the conflict, however, because Kruse's argument fails even on *de novo* review.

"The Supreme Court has long held that '[s]entences in criminal cases should reveal with fair certainty the intent of the court and exclude any serious misapprehensions by those who must execute them.'" *United States v. Willis*, 76 F.4th 467, 478 (5th Cir. 2023) (alteration in original) (quoting

*United States v. Daugherty*, 269 U.S. 360, 363 (1926)). "A sentence violates this command when it is ambiguous with respect to the time and manner in which it is to be served or is internally self-contradictory." *Id.* (quotation omitted).

Upon revoking a term of supervised release and imposing a sentence of imprisonment, the sentencing court may require the defendant to be placed on supervised release after his incarceration. 18 U.S.C. § 3583(h). The additional supervised-release term "shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release." *Id.* In Kruse's case, life is the maximum term of supervised release allowed for his underlying conviction under 18 U.S.C. § 2252A. *See* § 3583(k).

Two opinions issued by this court clarify how the maximum additional term of supervised release is determined under Section 3583(h) where, as here, a life term is authorized for the underlying conviction. *See United States v. Jackson*, 559 F.3d 368, 370–72 (5th Cir. 2009); *United States v. Campos*, 922 F.3d 686, 688 (5th Cir. 2019). In *Jackson*, the defendant argued the sentencing court erred by concluding the maximum term of supervised release that could be imposed upon revocation was life because, *inter alia*, it was impossible to subtract his revocation sentence from a life term of supervised release, as required by Section 3583(h). 559 F.3d at 370–72. This court held that, because the district court was permitted to "impose any term three years or greater, less the fifteen months of new imprisonment Jackson received," it did not err in deciding "the new maximum to be a life-term" of supervised release. *Id.* at 371–72. In *Campos*, this court stated that where the maximum term of supervised release authorized by the statute of conviction for the underlying offense is life, the maximum supervised-release term that

10

may be imposed "is a life term less" the defendant's "post-revocation imprisonment." 922 F.3d at 688 (citing 18 U.S.C. § 3583(h)).

Taken together, *Jackson* and *Campos* demonstrate that the law draws no distinction between a supervised-release term of "life" and a term of "life, minus revocation sentence," which are functionally equivalent. *See Jackson*, 559 F.3d at 371–72; *Campos*, 922 F.3d at 688. Accordingly, in Kruse's case, the district court's imposition in its written judgment of a supervised-release term of life, minus revocation sentence, is simply the maximum life term that the court orally pronounced. The sentence is therefore not "ambiguous with respect to the time and manner in which it is to be served." *Willis*, 76 F.4th at 478 (quotation omitted).

AFFIRMED.