# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 6, 2026

Lyle W. Cayce
Clerk

———————

No. 25-30346

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Jeremiah Johnson,

*Defendant—Appellant*.

———————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:24-CR-77-1

———————————————————

Before King, Southwick, and Haynes, *Circuit Judges*.

Per Curiam:[*]

Jeremiah Johnson appeals his 22-month revocation sentence—far exceeding the applicable Guidelines range—on both procedural and substantive grounds. He contends that the district court procedurally erred by relying on impermissible factors to determine the sentence and substantively erred by imposing an unreasonable sentence. Finding no reversible error, we AFFIRM.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-30346

# I

Jeremiah Johnson pleaded guilty to bank fraud and was sentenced to eight months in prison followed by three years of supervised release. He was also sentenced to pay $34,765.58 in restitution.

He served his eight-month prison term and, on October 13, 2022, began his tumultuous supervised release. Like other supervised releases, Johnson's entailed conditions, some standard and some special, with which he needed to comply. For example, he was required to continue his restitution payments; work full time; not engage in any form of gambling; notify a probation officer of changes in employment or residence; and comply with instructions from the probation office.

On July 1, 2024, the probation office filed a Petition for Warrant or Summons for Offender under Supervision with the district court, alleging multiple violations of those conditions. The petition alleged that Johnson was not working, had not made his restitution payments, missed a scheduled meeting with his probation officer, and had not yet completed a gambling self-exclusion form.

Upon a summons, Johnson appeared for a revocation hearing on July 23, 2024. Johnson admitted to the violations, and the district court revoked his supervised release. But the court did not sentence Johnson, instead resetting the sentencing for August 20, 2024, and instructing him to secure employment.

Secure employment, he did. So the district court continued the August sentencing to "be reset by further order of the [c]ourt."

On October 3, 2024, however, the probation office notified the district court via email of Johnson's continued noncompliance. The district court held a revocation hearing on October 22, during which Johnson again

2

admitted to violations of the supervised-release terms and the district court again revoked his supervised release. This time, the court also ordered Johnson to "turn over 20% of his gross monthly income to go towards his owed restitution," with the first payment due three days after the hearing. Moreover, Johnson was to "turn over his paystubs and take photographs of his restitution payments and email to them to the U.S. Probation Officer." To "allow [Johnson] to comply with the orders of the [c]ourt," the district court stayed the sentencing.

On January 13, 2025, the probation office emailed the district court, again advising it of Johnson's continued noncompliance. The email alleged that Johnson failed to make his restitution payments, provide financial information to the probation office, maintain employment, or report employment changes. The court issued a summons but, due to inclement weather, continued the revocation hearing to March 18, 2025.

In the meantime, Johnson secured another employment, so, yet again, the "hearing was upset in order to allow Mr. Johnson the chance to work and make payments towards restitution."

But it appears Johnson did not seize that chance. On April 14, 2025, the probation office filed an Amended Petition for Warrant or Summons for Offender under Supervision, alleging Johnson's continued and new violations of his conditions of supervised release. Specifically, it alleged that Johnson made restitution payments in October and November of 2024 but none since; moved residences without permission or notice, making his "current whereabouts . . . unknown"; failed to report employment change; failed to submit work search logs, as instructed; failed to report to the probation office; failed to complete a gambling self-exclusion form; failed to advise the probation office of his return from a work-related orientation in Ohio, as instructed; and failed to provide financial information, as the court

ordered. The district court issued a warrant for Johnson's arrest, and Johnson was arrested.

A detention hearing was held before a magistrate judge. Johnson's mother testified, explaining that he had been trying to maintain employment but that he did not have a car, so he relies on her to drive him to work on most days. Unsatisfied that Johnson is not likely to flee, the magistrate judge ultimately ordered him detained pending his revocation hearing.

The final revocation hearing was held on May 27, 2025. There, Johnson admitted to all but one violation of his supervised-release conditions. The district court made clear from the start its disappointment with Johnson's continued noncompliance:

> Mr. Johnson, I really thought that you had a chance. I really thought you had a chance. And I was willing to help you, in any way that I could, get the opportunity to become employed, to stay employed, and make enough money so that you wouldn't be a burden to your family and that you could begin making court-ordered restitution payments.

After Johnson's counsel and Johnson made their respective statements, the government made its statement, arguing for incarceration:

> But this is the problem. There is zero respect for the law. There is zero respect for this Court. And that is another major factor in the sentencing factors that the judge has to consider. And so for that, there is no alternative. He's made his own bed. It has to be incarceration.

Having heard from the parties, the district court continued:

> [Y]our record of noncompliance is absolutely the worst that I have seen for a person with your capability . . . You have misused the trust that I put in you.
>
> . . .

> [The government's counsel] is correct. You have disrespected the [c]ourt. You have disrespected the process. You've essentially thumbed your nose at the requirement that the [c]ourt placed on you for your supervised release.

The district court revoked Johnson's supervised release and sentenced him to 22 months in prison. It found that Johnson "committed multiple Grade C violations." It also noted that, while the U.S. Sentencing Commission Guidelines Manual ("Guidelines") suggests "an imprisonment range of three to nine months for a defendant committing one Grade C violation of supervised release and having a criminal history category of I," Johnson's "noncompliance ha[d] earned [him] far more." Johnson lodged a generalized "object[ion] to the length of the sentence," which was overruled. He timely appealed.

## II

Johnson argues that his sentence should be vacated for two reasons, one procedural and one substantive: (1) the district court plainly erred by relying on impermissible retributive factors in determining Johnson's revocation sentence; and (2) the 22-month sentence is unreasonable. We take these in turn.

## A

Because Johnson did not make a specific impermissible-factor objection below, the parties agree that plain-error review applies to the first issue. *See United States v. Cano*, 981 F.3d 422, 425 (5th Cir. 2020). To prevail on plain-error review, Johnson "must show that an error occurred, that the error was clear or obvious, and that the error affected his substantial rights." *United States v. Walker*, 742 F.3d 614, 616 (5th Cir. 2014). "If those factors are established, the decision to correct the forfeited error is within the court's sound discretion, which will not be exercised unless the error seriously affects

the fairness, integrity, or public reputation of judicial proceedings." *Id.* "[T]he question whether an error is clear or obvious is answered based on the law at the time of appeal." *Id.*

A court may "revoke a term of supervised release[] and require the defendant to serve in prison all or part of the term of supervised release . . . ." 18 U.S.C. § 3583(e)(3). But before doing so, the court must "consider[] the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *Id.* § 3583(e). "Missing from this list is § 3553(a)(2)(A), which allows a court to impose a sentence that reflects 'the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.'" *United States v. Miller*, 634 F.3d 841, 844 (5th Cir. 2011). Due this conspicuous absence, we have held that, "[w]hen sentencing a defendant under § 3583(e), a district court may not consider § 3553(a)(2)(A) because Congress deliberately omitted that factor from the permissible factors enumerated in the statute." *Id.*

Our reading was recently confirmed by the Supreme Court in *Esteras v. United States*, 145 S. Ct. 2031 (2025). Wading into a circuit split, the Court answered the question: "In determining whether to revoke a defendant's term of supervised release (per § 3583(e)), may a district court account for the need to exact retribution for the defendant's underlying crime (per § 3553(a)(2)(A))?" *Id.* at 2040. The Court answered that "[d]istrict courts cannot consider § 3553(a)(2)(A) when revoking supervised releases." *Id.* It echoed our court's textual reasoning, writing that "any 'omission' from that series [in § 3583(e)] necessarily 'bespeaks a negative implication.'" *Id.* at 2041.

As Johnson emphasizes, the Court also found support for its holding by looking to the role of supervised release in the criminal-justice system. It explained that § 3553(a)(2) "captures the traditional heartland of criminal

sentencing," listing out "four considerations—retribution, deterrence, incapacitation, and rehabilitation—[which] are the four purposes of sentencing generally." *Id.* at 2038. Supervised release, however, "is not a punishment in lieu of incarceration." *Id.* at 2041. "Rather, it 'fulfills rehabilitative ends' and 'provides individuals with postconfinement assistance.'" *Id.* "So when a defendant violates the conditions of his supervised released, it makes sense that a court must consider the *forward-looking* ends of sentencing (deterrence, incapacitation, and rehabilitation), but may not consider the *backward-looking* purposes of retribution." *Id.*

Sounds simple enough, but there is an important nuance. "Drawing a (very) fine line, the Guidelines Manual states that[, during revocation,] the district court is . . . punishing the defendant's breach of the court's trust," rather than "punish[ing] the offense that constitutes the supervised release violation." *United States v. Rivera*, 797 F.3d 307, 309 (5th Cir. 2015) (mem.) (citing U.S. Sent'g Guidelines Manual ch. 7, pt. A, intro. comment.). Applying this principle, we have declined to vacate, under plain-error review, a sentence that served to "effectuate the appropriate goal of sanctioning [the defendant's] supervised release violations and breaches of trust." *United States v. Pinner*, 655 F. App'x 205, 208 (5th Cir. 2016) (per curiam). And in *Esteras*, the high court acknowledged this distinction but did not disturb it, expressly taking "no position on whether this is a permissible consideration."145 S. Ct. at 2040 n.5.

Here, the district court remained on the correct side of this fine line. True, the district court agreed with the government's characterization that Johnson exhibited "zero respect for the law." Also true, as Johnson argues, the district "court did not discuss deterring future violations or protecting the public from Johnson's conduct." But both fail to carry any water for Johnson.

*First*, under plain-error review, the consideration of the impermissible factor must be a "dominant factor" in the district court's sentencing decision. *See Cano*, 981 F.3d at 425. Here, only once did the district court say that it agreed with the government. And the rest of the court's statements show a justified concern with Johnson's continued breaches of second and third chances and trust it gave to him throughout his supervised release.[1] So, in accordance with *Rivera* and the Guidelines, the district court focused primarily on punishing Johnson for his violations of his supervised-release terms, rather than for the underlying bank-fraud conviction.

*Second*, and similarly, the district court did not need to discuss "deterring future violations or protecting the public" because it rested its sentencing decision on another permissible factor—sanctioning the repeated, *past* breaches of the court's trust. *See Pinner*, 655 F. App'x at 208.

Accordingly, the district court did not make the impermissible factor a dominant one in arriving at Johnson's revocation sentence, instead focusing on punishment for breaches of the court's trust. It thus did not commit plain error.

**B**

Even without a procedural error, Johnson argues, the district court erred because the 22-month revocation sentence—far exceeding the

---

[1] For example, the court stated as follows at various points in the hearing: "I really thought you had a chance. And I was willing to help you, in any way that I could . . ."; "your record of noncompliance is absolutely the worst that I have seen for a person with your capability"; "[y]ou have misused the trust that I put in you"; "I have been as lenient with you as I have been with anyone in my 22 years on the bench, hoping that you would find the footing that you needed to become a compliant person"; "[y]ou have disrespected the [c]ourt"; "[y]ou have disrespected the process"; "[y]ou've essentially thumbed your nose at the requirements that the [c]ourt placed on you for your supervised release"; "[y]our noncompliance has earned you far more [than the Guidelines range]."

Guidelines range of three to nine months—is substantively unreasonable. Because Johnson specifically objected to the length of his sentence, we review this point of error for abuse of discretion, examining the totality of the circumstances. *United States v. Warren*, 720 F.3d 321, 332 (5th Cir. 2013).

Under this standard of review, "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). "Our deferential review is informed by the knowledge that '[t]he sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court.'" *Id.* (quoting *Gall*, 552 U.S. at 51–52). A sentence is substantively unreasonable if it "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *Id.*

At issue here is the third prong—whether the district court made a clear error in judgment when balancing the sentencing factors. Johnson thinks yes, but we think no.

To start, the district court did not exceed the bounds of the maximum sentence. Johnson's conviction for bank fraud carries a maximum sentence of 30 years in prison and is a Class B felony. *Id.* §§ 1344(2), 3559(a)(2). And for Class B felonies, the district court "may . . . revoke a term of supervised release[] and require the defendant to serve in prison all or part of the term of supervised release authorized by statute," up to three years in prison.. 18 U.S.C. § 3583(e)(3). So while the district court departed upwards from the Guidelines range by imposing a 22-month revocation sentence, it stayed well below the statutory maximum. "We have routinely affirmed revocation

sentences exceeding the advisory range, even where the sentence equals the statutory maximum." *Warren*, 720 F.3d at 332.

Moreover, the district court gave Johnson no fewer than *three* chances to comply with his supervised-release conditions, all to no avail. And while the record does reflect some practical difficulties in commuting to work, that fails to explain the other repeated violations of the supervised-release conditions such as notifying the probation office of changes in residence and employment or attending a mandatory meeting with a probation officer. Under our deferential review, these repeated, and some unexplained, violations thus sufficiently justify the district court's sentencing decision; we see no clear error.

Therefore, we cannot conclude that the district court—having extended multiple opportunities for Johnson to remain in society but being betrayed each time—made a clear error in judgment for weighing that betrayal heavily and imposing a sentence well below the statutory maximum.

## III

For the foregoing reasons, we AFFIRM the judgment of the district court.